UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BENEDICT AKPAN,

    *Plaintiff*,

v.

L. FRANCIS CISSNA, Director, United
States Citizenship and Immigration Services,[1]

GREGORY RICHARDSON, Director,
Texas Service Center, and

CONRAD ZARAGOZA, Field Office
Director, Baltimore District Office,

    *Defendants*.

Civil Action No. 17-0252 (DLF)

## MEMORANDUM OPINION

In this action, Plaintiff Benedict Akpan ("Akpan") petitions this Court to amend his certificate of naturalization or compel the United States Citizenship and Immigration Services ("USCIS") to amend the certificate. Before the Court is the Defendants' Motion to Dismiss Plaintiff's Petition. Dkt. 10. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

Akpan is a naturalized U.S. citizen who claims to have been born on October 1, 1951, in Ekpene Ukim, Nigeria, although his Nigerian passport and U.S. naturalization certificate indicate that his date of birth is October 1, 1956. Pl.'s Pet. to Amend Certificate of Naturalization

---

[1] When filed, Akpan's petition named Lori Scialabba as the Acting Director of USCIS. Pet. ¶ 2. Her successor, James McCament, was automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d). James McCament's successor—L. Francis Cissna— became Director of USCIS in October 2017 and is now a defendant in this action.

("Pet.") ¶¶ 8, 10, Dkt. 1.  According to Akpan, his Nigerian passport reflects an incorrect date of birth because a family member, who is no longer alive, made a mistake when submitting Akpan's application for a Nigerian passport.  *Id.* ¶¶ 8–9; *see also* Pet. Ex. 3, Affidavit of Benedict Edet Akpan ("Aff.") ¶¶ 5, 9.  Akpan claims that he continued to assert the allegedly incorrect birthdate on his 1995 U.S. naturalization application because he thought that his application was required to have the same date of birth that was listed on his Nigerian passport.  Pet. ¶ 14.  Although a full discussion of the facts alleged in Akpan's petition is not necessary to resolve this motion, some factual background is helpful to understand his claims.

In 1980, Akpan applied for a non-immigrant student visa to study in the United States.  Aff. ¶ 7.  He also obtained—via a now-deceased family member—a Nigerian passport with an allegedly incorrect date of birth.  Pet. ¶ 9; Aff. ¶ 9.  According to Akpan, he provided his correct date of birth on his student visa application, and prior to his student visa interview, he alerted U.S. consular officials to the error on his Nigerian passport.  Aff. ¶¶ 7–10.  Akpan claims, however, that U.S. consular officials instructed him to accept a student visa with the incorrect date of birth, travel to the United States on an incorrect Nigerian passport, and fix the error when he returned to Nigeria after the expiration of his non-immigrant student visa.  *Id.* ¶ 10.  As a result, Akpan traveled to the United States on a student visa that reflected that he was 24 years old, rather than 29 years old as he now claims to have been at the time.  *See id.* ¶¶ 2, 10.  In the United States, Akpan attended West Virginia State College and later transferred to Howard University.  *Id.* ¶ 2.

After completing his studies in the United States, Akpan did not return to Nigeria immediately.  Instead, he remained in the United States without lawful immigration status from 1986 to 1988.  Pet. ¶ 12.  At some point between 1986 and 1988, Akpan initiated proceedings to

2

become a permanent resident of the United States. *See id.* ¶ 12; Aff. ¶ 3. During that application process, he provided the date of birth listed on his Nigerian passport. Pet. Ex. 2, ¶ 3. Akpan was granted lawful permanent residency in 1988. Pet. ¶ 13. After becoming a permanent resident, Akpan returned to Nigeria but did not correct the alleged error on his passport. *See* Pet. Ex. 2, ¶ 3.

In the 1990s, Akpan applied to become a naturalized citizen of the United States using the same allegedly incorrect birthdate: October 1, 1956. Akpan claims that he continued to use that date of birth because "he thought that his Naturalization application was required to have the same date of birth that was listed on his Nigerian passport." Pet. ¶ 14. Akpan's application for citizenship was successful, and in 1995, USCIS's predecessor, the Immigration and Naturalization Service, issued Akpan a naturalization certificate with the same allegedly incorrect date of birth. *Id.* ¶ 15 & Ex. 5.

In 2014, nearly twenty years after Akpan become a naturalized citizen, he took his first official step to correct the alleged birthdate error on his naturalization certificate. He submitted a Form N-565 (Application for Replacement Naturalization Document) to USCIS, requesting that USCIS issue him an amended naturalization certificate with a different date of birth: October 1, 1951, which would make him 66 years old today. Pet. Ex. 2. In a letter dated July 8, 2015, USCIS denied Akpan's request for an amended naturalization certificate. Pet. ¶¶ 16–18 & Ex. 9.

USCIS's denial is the subject of this action, which Akpan brought on February 7, 2017 against USCIS officials in their official capacities: the Director of USCIS, the Director of the Texas Service Center, and the Field Office Director of the Baltimore District Office (together, the "Defendants"). Pet. ¶¶ 3–5. Akpan's petition requests that the Court amend his certificate of naturalization or compel USCIS to amend the certificate. *Id.* ¶¶ 1, 6. To establish his actual date

3

of birth, Akpan has attached as exhibits to his petition his own declaration and affidavit, a baptismal certificate, various school certificates, and an affidavit from a third party. *See* Pet. Exs. 2–3, 4–8.

On July 28, 2017, Defendants moved to dismiss Akpan's petition for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss at 1, Dkt. 10.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks and citation omitted). Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Id.* Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

4

If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. To state a facially plausible claim, the plaintiff must plead "factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint alleging "facts [that] are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When evaluating a Rule 12(b)(6) motion, the court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). Conclusory allegations, however, are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Along with the allegations within the four corners of the complaint, the court can consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. ANALYSIS

### A. The Immigration Act of 1990 and 8 C.F.R. § 334.16

Akpan's "Petition to Amend Certificate of Naturalization" requests that this Court amend—or compel USCIS to amend—Akpan's certificate of naturalization. Pet. ¶¶ 1, 6, prayer for relief. The petition asserts that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 8 C.F.R. § 334.16, which purportedly "has been held to provide Federal District Courts with original jurisdiction over petitions to amend naturalization documents after an individual has been granted citizenship." *Id.* ¶ 6. Unfortunately for Akpan's claim, however, Section 334.16 was repealed in 2011. *See* 76 Fed. Reg. 53764, 53768-69 (Aug. 29, 2011).[2] After Defendants pointed out this fact in their motion to dismiss Akpan's petition for lack of jurisdiction, Akpan conceded that 8 C.F.R. § 334.16 does not grant this Court subject-matter jurisdiction over his petition. Pl.'s Opp. at 3, Dkt. 11.

The Court agrees that Section 334.16 does not authorize this Court to amend Akpan's certificate. Before 1990, federal courts held broad authority to naturalize persons and amend certificates of naturalization. *See* 8 U.S.C. §§ 1421(a), 1451(i) (1988). The Immigration Act of 1990, however, transferred the authority to issue naturalization certificates to the executive

---

[2] Before its repeal, Section 334.16 stated:

> Amendment of petition for naturalization. . . . (b) After final action on petition. Whenever an application is made to the court to amend a petition for naturalization after final action thereon has been taken by the court, a copy of the application shall be served upon the district director having administrative jurisdiction over the territory in which the court is located, in the manner and within the time provided by the rules of court in which application is made. No objection shall be made to the amendment of a petition for naturalization after the petitioner for naturalization has been admitted to citizenship if the motion or application is to correct a clerical error arising from oversight or omission.

8 C.F.R. § 334.16(b) (2010).

branch. Pub. L. No. 101-649, § 401(a) (codified at 8 U.S.C. § 1421(a)); *United States v. Straker*, 800 F.3d 570, 586 (D.C. Cir. 2015) ("Congress has vested sole naturalization authority in the Attorney General."). Under the 1990 Act, courts retained some authority to amend certificates issued by the judicial branch before 1990. But the Act limited—and perhaps eliminated—the authority of courts to amend certificates issued by the executive branch after the 1990 Act took effect. *See id.* § 401(a) (codified at 8 U.S.C. § 1421(a)); *id.* § 407(d) (titled "Substituting Appropriate Administrative Authority for Naturalization Court"); *id.* § 407(d)(18)(D) (codified at 8 U.S.C. § 1451(h)); *see also Malineni v. USCIS*, No. 12-cv-13453, 2013 WL 466204, at *2 (E.D. Mich. Feb. 7, 2013) (holding that the Immigration Act of 1990 eliminated judicial authority to amend certificates issued by the executive branch); *McKenzie v. USCIS*, No. 11-cv-1106, 2012 WL 5954193, at *2 (W.D. Okla. Nov. 28, 2012) (same). The Immigration and Naturalization Service issued Akpan's certificate of naturalization in 1995, years after the 1990 Act took effect. Therefore, if the 1990 Act entirely eliminated judicial authority to amend certificates issued by the executive branch, this Court lacks the authority to amend Akpan's certificate.

Moreover, even if the Immigration Act of 1990 permitted courts to amend *some* USCIS-issued certificates of naturalization, the Act does not permit this Court to do so in this case. The courts that have amended USCIS-issued certificates after 1990 have done so under circumstances that do not exist here. *See, e.g.*, *In re Weldeabzghi*, No. 11-cv-3087, 2013 WL 717755, at *6 (D. Minn. Feb. 27, 2013) (amending a USCIS-issued certificate where petition was filed before Section 334.16's repeal, but noting that the "holding does not create jurisdiction over future petitions to amend nonclerical errors filed under § 334.16(b) after it was repealed"); *Mouse v. USCIS*, No. 10-cv-0218, 2011 WL 32490, at *1 (D. Nev. Jan. 5, 2011) (amending USCIS-issued

7

certificates pursuant to Section 334.16 when the government conceded judicial authority to amend). This Court need not address the merits of these decisions because they are easily distinguishable from this case. Here, Defendants do not concede judicial authority to amend Akpan's certificate of naturalization, and Section 334.16 is of no consequence. The 1990 Act and Section 334.16—a regulation that was repealed in 2011—do not empower this Court to amend the naturalization certificate in this dispute, which began when Akpan petitioned USCIS in 2014. Accordingly, Akpan's Section 334.16 claim will be dismissed for lack of jurisdiction.

### B. Arbitrary and Capricious Challenge to USCIS's Denial

In lieu of his Section 334.16 petition, Akpan argues that USCIS's denial of his request to amend the birthdate on his naturalization certificate was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), and should therefore be overturned. Pl.'s Opp. at 4. The Defendants move to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6), arguing that USCIS did not act arbitrarily or capriciously when it denied Akpan's request to alter his certificate. Defs.' Mem. in Supp. of Mot. to Dismiss at 1, 8–11, Dkt. 10-1.

Under the APA, the reviewing court shall set aside final agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). As the Supreme Court has instructed, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations omitted). "The ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Overton*

*Park*, 401 U.S. at 416. Moreover, "this standard does not allow the courts to undertake their own factfinding." Rather, "the court will generally defer to the wisdom of the agency as long as the action is supported by 'reasoned decisionmaking.'" *Bean v. Perdue*, No. 17-cv-0140, 2017 WL 4005603, at *5 (D.D.C. Sept. 11, 2017) (quoting *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012)). Such deference "is especially appropriate in the immigration context." *INS v. Aguirre-Aguiree*, 526 U.S. 415, 425 (1999) (citing *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

When reviewing final agency action, the court "should have before it neither more nor less information than did the agency when it made its decision, . . . so the APA requires review of 'the whole record.'" *Dist. Hosp. Partners, L.P. v. Sebelius*, 794 F. Supp. 2d 162, 173 (D.D.C. 2011) (quoting 5 U.S.C. § 706 and *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). "A district court reviewing an agency action under the APA's arbitrary and capricious standard does not resolve factual issues." *Atl. Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d 1, 12–13 (D.D.C. 2008). Instead, the "entire case on review is a question of law and can be resolved on the agency record in the context of a motion to dismiss under Rule 12(b)(6)." *Id.* (internal quotation marks omitted). Finally, "the party challenging an agency's action as arbitrary and capricious bears the burden of proof." *Bean*, 2017 WL 4005603, at *5 (quoting *San Luis Obispo Mothers for Peace v. U.S. Nuclear Reg. Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc)).

The administrative record before this Court includes Akpan's Form N-565 (Application for Replacement Naturalization Document), the application's supporting documents, and USCIS's denial letter. *See* Pet. ¶ 15 & Exs. 1–2, 4–8, 9. The denial letter, sent July 8, 2015, clearly sets forth USCIS's reasons for refusing to amend Akpan's naturalization certificate. Pet. Ex. 9. The letter explains that USCIS regulations do not permit USCIS "to issue a replacement

9

certificate for a date of birth other than that which was established at the time of naturalization." *Id.* In refusing to amend Akpan's certificate, USCIS relied upon 8 C.F.R. § 338.5 in particular, which states:

> Whenever a Certificate of Naturalization has been delivered which does not conform to the facts shown on the application for naturalization, or a clerical error was made in preparing the certificate, an application for issuance of a corrected certificate may be filed . . . .
>
> If the certificate was originally issued by USCIS (or its predecessor agency), and USCIS finds that a correction was justified, the correction shall be made to the certificate and a dated endorsement made on the reverse of the certificate.

8 C.F.R. § 338.5(a), (c). The regulation then defines "justified":

> The correction will not be deemed to be justified where the naturalized person later alleges that the name or date of birth which the applicant stated to be his or her correct name or date of birth at the time of naturalization was not in fact his or her name or date of birth at the time of the naturalization.

8 C.F.R. § 338.5(e). Quoting this language, USCIS denied Akpan's request to amend his certificate of naturalization. Pet. Ex. 9. In doing so, USCIS "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43.

Akpan does not dispute the facts found by USCIS. Indeed, according to Akpan, the parties "largely agree on the factual and procedural history." Pl.'s Opp. at 2. In particular, Akpan acknowledges that he asserted October 1, 1956 as his date of birth when he applied for naturalization in 1995. Pet. ¶ 14. He explains that he "used this incorrect date of birth because he thought that his Naturalization application was required to have the same date of birth that was listed on his Nigerian passport." *Id.*; *see also* Pet. Ex. 2, ¶ 3 ("When I applied for citizenship, . . . I thought that I needed to keep the same date of birth even though it was incorrect."). In his 2014 request to amend his naturalization certificate, Akpan provided USCIS

10

with documents indicating an earlier date of birth. The documents are also attached to his petition. *See* Pet. Exs. 2, 4, 6–8. But none of the documents suggests that Akpan's 1995 naturalization certificate "does not conform to the facts shown on [his] application for naturalization" or that " a clerical error was made in preparing the certificate." 8 C.F.R. § 338.5(a). Rather, Akpan acknowledges that he asserted a birthdate of October 1, 1956 in his application for naturalization. Pet. ¶ 14.

Based on these facts, the Court concludes that USCIS acted reasonably in denying Akpan's request. As USCIS explained, its decision conforms with USCIS regulations, which directly address Akpan's situation: USCIS is not permitted to amend certificates "where the naturalized person later alleges that the . . . date of birth which the applicant stated to be his or her correct . . . date of birth at the time of naturalization was not in fact his or her . . . date of birth at the time of the naturalization." 8 C.F.R. § 338.5(e). When an agency "can demonstrate that it was adhering to the relevant statutes and regulations" in an adjudication, "then its decision [is] neither arbitrary nor capricious." *Bean*, 2017 WL 4005603, at *6; *see also id.* (citing cases finding that "administrative decisions made in accordance with statues and regulations are not arbitrary and capricious").

Akpan contends that USCIS conducted a purely mechanical review, without a "reasonable consideration of relevant factors," such as his supporting documents. Pl.'s Opp. at 5 (quoting *NTCH, Inc. v. FCC*, 841 F.3d 497, 508 (D.C. Cir. 2016)). But, contrary to Akpan's argument, the regulation *does not make relevant* all possible documents or factors. Instead, the regulation directs USCIS to consider whether a naturalization certificate "conform[s] to the facts shown on the application for naturalization" and whether "a clerical error was made in preparing the certificate." The regulation specifically prohibits an amendment when a person states his

11

date of birth at the time of naturalization but later alleges a different date. 8 C.F.R. § 338.5(a), (e). Akpan does not point to any regulatory authority requiring USCIS to consider other factors. Nor does he point to any statutory authority requiring USCIS to consider other factors. This is unsurprising, given that Congress has conferred broad discretion on the executive branch in the realm of naturalization. *See* 8 U.S.C. §§ 1421(a), 1451(h). Here, USCIS "consider[ed] the relevant factors" and the facts acknowledged by Akpan, and then "articulate[d] a satisfactory explanation" for its decision—namely, that amendment in Akpan's circumstances was not permitted under 8 C.F.R. § 338.5. *Overton Park*, 401 U.S. at 416; *State Farm*, 463 U.S. at 43. As a result, the Court concludes that USCIS did not act arbitrarily and capriciously by denying Akpan's request. Akpan's claim to that effect will be dismissed with prejudice.

### C. Arbitrary and Capricious Challenge to 8 C.F.R. § 338.5

At bottom, Akpan's grievance is with the content of 8 C.F.R. § 338.5 itself. Akpan argues for the first time in his opposition brief that the promulgation of Section 338.5 was arbitrary and capricious "because there is no justification for preventing a broad class of naturalized citizens from changing the date of birth on their naturalization certificates." Pl.'s Opp. at 6. The Defendants argue the contrary and cite two cases in which federal courts have concluded that the promulgation of Section 338.5 was not arbitrary or capricious. *See* Defs.' Reply at 2-4, Dkt. 15. The parties' briefs refer to portions of the administrative record, but that record does not appear to be complete. Regardless, this Court does not reach the merits of the parties' arguments because their briefs cannot redeem the deficiencies of Akpan's petition, which fails to state a claim that the promulgation of 8 C.F.R. § 338.5 was arbitrary and capricious.

"To state a claim for arbitrary and capricious agency action under the APA, a plaintiff must allege that an agency 'has relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 78 (D.D.C. 2015) (quoting *State Farm*, 463 U.S. at 43); *see also James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 284 (D.C. Cir. 2000) (explaining that a plaintiff can state an arbitrary and capricious claim by "alleging that the agency failed to articulate an adequate explanation for its new policy" or "failed to consider factors made relevant by Congress").

Akpan's petition "sheds no light on any of the criteria" required to state an arbitrary and capricious claim against 8 C.F.R. § 338.5. *Fraternal Order of Police v. Gates*, 602 F. Supp. 2d 104, 108 (D.D.C. 2009). Instead, the petition proceeds under the assumption that the now-repealed Section 334.16 will afford Akpan relief. *See, e.g.*, Pet. ¶ 6. As a result, the petition does not challenge the promulgation of Section 338.5 at all. The petition does not refer to the APA or Section 338.5, nor does it request that this Court hold that Section 338.5 violates the APA. Moreover, even when read liberally, the petition does not allege any facts indicating that the agency's 1991 decision to promulgate Section 338.5 was not "supported by 'reasoned decisionmaking.'" *Bean*, 2017 WL 4005603, at *5 (quoting *Fox*, 684 F.3d at 75). For example, the petition does not allege any facts indicating that the agency—when promulgating Section 338.5—relied on factors that Congress did not intend it to consider, failed to consider an important aspect of the problem, or failed to articulate an adequate explanation for its new policy. *See State Farm*, 463 U.S. at 43; *Glickman*, 229 F.3d 277, 284. Therefore, Akpan's purported claim that the promulgation of 8 C.F.R. § 338.5 was arbitrary and capricious will be dismissed without prejudice.

13

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss Plaintiff's Petition and dismisses this case for lack of jurisdiction and for failure to state a claim on which relief can be granted. With respect to any potential claim that the promulgation of 8 C.F.R. § 338.5 was an arbitrary and capricious agency action, dismissal is without prejudice. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: January 22, 2018